UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
EVERHOME MORTGAGE COMPANY,

               Plaintiff,

  - against -

THE CHARTER OAK FIRE INSURANCE
COMPANY and THE ST. PAUL TRAVELERS
COMPANIES, INC., MANTINA KRAIEM, and
LASALLE BANK, N.A.,

               Defendants.
--------------------------------------------------------X

**MEMORANDUM AND
ORDER**

07-CV-98 (RRM)(RML)

**ROSLYNN R. MAUSKOPF, United States District Judge.**

      Plaintiff EverHome Mortgage Company ("EverHome") brings this diversity action against homeowner Mantina Kraiem ("Kraiem"), insurers the Charter Oak Fire Insurance Company and St. Paul Travelers Companies (together "Travelers"), and mortgage lender LaSalle Bank, N.A. ("LaSalle"). EverHome, the successor lender on Kraiem's home equity loan, seeks damages for Travelers' failure to name EverHome on a proceeds check issued under Kraiem's home insurance policy after Kraiem's home was destroyed by fire. (AC (Doc. No. 62) ¶¶ 1–2.) EverHome further seeks declaratory judgment of its entitlement to any proceeds beyond those due to LaSalle, the successor lender on Kraiem's mortgage. (*Id.* ¶ 6.) EverHome also brings claims for breach of contract and unjust enrichment against Kraiem. (*Id.* ¶ 4.) LaSalle in turn presents counterclaims against EverHome for declaratory judgment of the priority of its lien, and crossclaims against Travelers for the policy proceeds. (LaSalle Ans. (Doc No. 75) at 15–21.) LaSalle and Travelers both bring crossclaims against Kraiem to recover the proceeds. (LaSalle Ans. at 22–23; Travelers Ans. to AC (Doc No. 77) at 13–15.)

Travelers now moves for summary judgment on all claims against it by EverHome and LaSalle. (Travelers Mot. Summ. J. against EverHome (Doc. No. 102); Travelers Mot. Summ. J. against LaSalle (Doc. No. 110).) For the reasons set forth below, both motions for summary judgment are GRANTED.

## BACKGROUND[1]

On November 12, 2004, Kraiem purchased a property at 2037 East 23rd Street, Brooklyn, New York (the "Property"), which included a two story residential structure (the "Structure"), for a total purchase price of $670,000. (EverHome Statement of Material Undisputed Facts ("EverHome 56.1 Stmt.") (Doc. No. 108) ¶ 1.) In connection with the purchase, Kraiem took out two mortgages secured by the Property. Kraiem's first mortgage, for $427,000 (the "LaSalle Mortgage" or "First Mortgage"), was executed with a nominee of Bank of New York Mortgage Company LLC. (LaSalle Statement of Material Undisputed Facts ("LaSalle 56.1 Stmt.") (Doc. No. 116) at 7–8 ¶¶ 1–2.) The First Mortgage was eventually gathered into a series of Washington Mutual mortgage pass-through certificates, for which LaSalle now serves as trustee. (*Id.*) Kraiem's second mortgage, a Home Equity Line of Credit mortgage for $109,000 (the "EverHome Mortgage" or "Second Mortgage"), was also issued by the Bank of New York Mortgage Company, but was ultimately assigned to EverHome as successor-in-interest. (EverHome 56.1 Stmt. ¶ 3; Fox Decl. in Suppt. Of Mot. against EverHome ("Fox Decl.") (Doc. No. 104) Ex. 9.) Kraiem's closing settlement statement confirms that "BNY Mortgage Company,

---

[1] The following facts are drawn from the parties' Local Rule 56.1 statements, and declarations, affidavits, and exhibits submitted in support of and opposition to Travelers' motions for summary judgment. Unless otherwise noted, citations to the parties' Rule 56.1 statements concern factual assertions that are admitted or are deemed admitted because they were not contradicted by citations to admissible evidence. *See* Local R. 56.1(d) (requiring each paragraph in the movant's and opponent's statements to "be followed by citation to evidence which would be admissible"); *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party ... fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted.").

LLC" was a lender of $427,000, and acknowledges an additional $109,000 in "Subordinate Financing." (Fox Decl. Ex. 8.)

In connection with the purchase of the Property, Kraiem obtained a Homeowners Policy from defendant Travelers on the Structure (the "Policy"), including fire insurance, which was effective from November 8, 2004 to November 8, 2005. (EverHome 56.1 Stmt. ¶ 5.) Paragraph 12 of the Policy, entitled "Mortgage Clause," states in relevant part,

> If a mortgagee is named under this policy, any loss payable under Coverage A or B shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:
>
> a. notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;
> b. pays any premium due under this policy on demand if you have neglected to pay the premium;
> c. submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us, and Loss Payment apply to the mortgagee.

(Fox Decl. Ex. 5, form HO-3 at 11.)

The Policy contains a "Suit Against Us" limitation, which is amended by a New York endorsement.[2] (LaSalle Statement of Material Undisputed Facts ("LaSalle 56.1 Stmt.") at 2–3 ¶¶ 5–6.) The New York endorsement states in relevant part,

> **8. Suit Against Us.** Is deleted and the following substituted:
>
> **8. Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage.

(Fox Decl. Ex. 5, form HA-300 NY "Special Provisions – New York" at 3.)

---

[2] An "endorsement" is "[a]n amendment to an insurance policy; a rider." Black's Law Dictionary 607 (9th ed. 2009). "[I]n construing an endorsement to an insurance policy, the endorsement and the policy must be read together, and the words of the policy remain in full force and effect except as altered by the words of the endorsement." *County of Columbia v. Continental Ins. Co.*. 634 N.E.2d 946, 950, 83 N.Y.2d 618, 628 (1994).

The Policy's original insurance binder listed LaSalle's and EverHome's common predecessor-in-interest "Bank of New York" as mortgagee. (Bohn Aff. (Doc. No. 115) Ex. A.)

On January 27, 2005, the Structure was completely destroyed by fire. (EverHome 56.1 Stmt. ¶ 7.) EverHome sent Travelers a letter on February 22, 2005, asking that Travelers amend the Policy to include it as mortgagee. (Daskalakis Decl. (Doc. No. 107) Ex. 5.) Travelers acknowledges possession of this letter in response to a discovery request by EverHome, and conceded that a "Policy Change Declaration" dated March 14, 2005 lists "Washington Mutual Bank FA" as a first mortgagee and EverHome as a second mortgagee. (Daskalakis Decl. Ex. 4 ("Travelers Responses to Request for Admissions") at 2; *id.* Exs. 5–6.) Despite awareness of the mortgagees' claims, on September 13, 2005, Travelers issued a check for the loss payable to Kraiem alone in the amount of $291,336.21. (Fox Decl. ¶ 8.) On that date, the outstanding balance on the LaSalle Mortgage was $422,762.29. (*Id.* ¶ 9.) EverHome, Travelers, and LaSalle agree that Kraiem did not spend the insurance proceeds to pay down the LaSalle Mortgage or to repair the property. (Travelers Mem. of Law in Supp. of Mot. for Summ. J. against EverHome ("Travelers Mem. against EverHome") (Doc. No. 103) at 4; Pl. Mem. of Law in Opp. to Mot. for Summ. J. ("EverHome Mem.") (Doc. No. 106) at 4; LaSalle Ans. at 22–23.)

On December 11, 2006, EverHome sued Travelers in New York State Supreme Court, alleging that Travelers was liable to EverHome for at least $109,861.17, the total amount required to pay off the EverHome Mortgage. (Notice of Removal (Doc. No. 1) at 4–5; EverHome Mem. at 5.) EverHome also asserted claims against Travelers for breach of the implied contract of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, negligence, and violation of New York General Business Law § 349. (EverHome Mem. at 5.) Travelers removed the case under this Court's diversity jurisdiction on January 9, 2007. (Notice of Removal at 1–3.)

4

In August 2009, EverHome filed an Amended Complaint, adding LaSalle and Kraiem as defendants. (AC at 1.) The Amended Complaint renews all of EverHome's claims against Travelers. (*Id.* at 9–15.) The Amended Complaint adds claims against Kraiem for *inter alia* breach of the EverHome Second Mortgage, and against LaSalle for a declaratory judgment of EverHome's entitlement to "any monetary amounts greater than the amounts due to LaSalle" under the LaSalle Mortgage. (*Id.*; AC at 15–17.)

On June 8, 2010, Travelers, Kraiem, and LaSalle each answered the Amended Complaint.

Travelers' Answer includes crossclaims against Kraiem for equitable restoration of the insurance proceeds, unjust enrichment, constructive trust, and conversion. (Travelers Ans. to AC (Doc No. 77) at 13–15.) Kraiem has not answered Travelers' crossclaims.

LaSalle's Answer includes crossclaims against Travelers for breach of the Policy, of which it alleges it was an intended third-party beneficiary, and for promissory estoppel, negligence, and breach of the implied covenant of good faith and fair dealing. (LaSalle Ans. at 15–21.) LaSalle's answer further includes crossclaims against Kraiem for breach of contract and unjust enrichment.[3] (*Id.* at 22–23.) Finally, LaSalle's answer includes a counterclaim against EverHome for declaratory judgment that LaSalle's interest in the Property "is superior to that of EverHome, and that [LaSalle] is entitled to all Insurance Proceeds under the Policy as set forth in the [LaSalle] Mortgage." (*Id.* at 23.)

Travelers has now moved for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure on all claims by EverHome and LaSalle.

---

[3] The Court subsequently granted default judgment on LaSalle's claims against Kraiem. (Order of Sep. 12, 2011 (Doc. No. 121).)

As to EverHome's pending claims, Travelers asserts that because the insurance proceeds were less than the outstanding balance on the LaSalle mortgage, EverHome had no interest in the proceeds. (Travelers Mem. against EverHome at 5.) EverHome argues in response that LaSalle waived its rights under the Policy, and that EverHome was thus entitled to a payment from Travelers in the amount of the EverHome Mortgage. (EverHome Opp. at 6.) Travelers in turn denies that LaSalle ever unmistakably manifested a waiver of its rights under the Policy. (Travelers Reply against EverHome at 4.)   For the reasons below, the Court agrees with Travelers.

As to LaSalle's crossclaims, Travelers contends that they are far outside the two-year statute of limitation set forth in the Policy and at New York State Insurance Law § 3404(e). (Travelers Mem. against LaSalle (Doc. No. 111) at 11.) LaSalle denies that the Policy's statute of limitation applies to its crossclaims, and argues alternatively that its crossclaims can "relate back" to the December 11, 2006 filing date of EverHome's original complaint against Travelers. (LaSalle Opp. at 3, 7.) Travelers replies that the Appellate Division's holding in *G.E. Capital Mortgage Servs., Inc. v. Daskal*, 211 A.D.2d 613 (App. Div. 1995) unequivocally applies statutory and policy time limits to mortgagees, and that LaSalle cannot combine the relating back provisions of Fed. R. Civ. P. 15(c), C.P.L.R. 203(d), and C.P.L.R. 203(f) to entitle its crossclaims to the date of EverHome's original filing. (Travelers Reply against LaSalle at 6, 8.) Again, the Court agrees with Travelers.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute

and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a district court must draw all reasonable inferences in favor of the non-moving party. *See id.* at 249 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)); *Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). Thus, the court must not "weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty America v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Any evidence in the record of any material fact from which an inference could be drawn in favor of the non-moving party precludes summary judgment. *See Castle Rock Entm't*, 150 F.3d at 137.

Once the movant has demonstrated that no genuine issue of material fact exists, such that it is entitled to judgment as a matter of law, then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). However, there must exist more than mere "metaphysical doubt as to the material facts" to defeat a summary judgment motion. *Id.* at 58. Instead, the non-moving party must present "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Only disputes over material facts "that might affect the outcome of the suit under the governing law"

will properly preclude the entry of summary judgment. *Id.* at 248; *see also Matsushita*, 475 U.S. at 586.

## DISCUSSION

A. Travelers' Motion against EverHome

Travelers argues that because the insurance proceeds it gave to Kraiem were less than the outstanding balance on the LaSalle Mortgage, EverHome never had a legal interest in the proceeds.

"Insurance policies are, in essence, creatures of contract, and accordingly, subject to principles of contract interpretation." *In re Covert*, 761 N.E.2d 571, 576–77, 97 N.Y.2d 68, 76 (2001) (citations and internal quotation marks omitted); *see also Zahler v. Twin City Fire Ins. Co.*, No. 04-CV-10299, 2007 WL 2936321, at *2 (S.D.N.Y. Sep. 17, 2007) ("New York insurance law provides that 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.' " (quoting *Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000))).

Since an insurance policy is a personal contract between the insurer and the insured, a creditor has a legal interest in insurance proceeds only if his rights are explicit in the policy or another agreement. *Cromwell v. Brooklyn Fire Ins. Co.*, 44 N.Y. 42, 47 (1870); *see McGraw-Edison Credit Corp. v. All State Ins. Co.*, 62 A.D.2d 872, 877, 406 N.Y.S.2d 337, 339 (App. Div. 1978) ("One who has a lien only on the insured property has no claim to the insurance money realized by the insured in the event of a loss of the property, for a claim on the insurance money arises only out of the contract." (citations omitted)). If a debtor has not agreed that his insurance policy will benefit his secured creditor, the creditor may not recover from the insurer under

common-law or equity principles. *McGraw-Edison Credit Corp.*, 62 A.D.2d at 876–77, 406 N.Y.S.2d at 339.

In contrast, where a mortgagee is named in an insurance policy, he obtains an interest in the proceeds. *McDowell v. Saint Paul Fire & Mar. Ins. Co.*, 101 N.E. 457, 207 N.Y. 482, 485 (1913). If the policy contains only a "loss payable to mortgagee" clause, the mortgagee is merely a nominee, "the appointee of the party insured to receive the money which might become due him from the insurers upon the contract." *Grosvenor v. Atlantic Fire Ins. Co.*, 17 N.Y. 391, 394 (1858); *Fields v. Western Millers Mut. Fire Ins. Co.*, 48 N.E.2d 489, 490–91, 290 N.Y. 209, 212–13 (1943). If the policy, however, is issued to a mortgagee and mortgagor "as their interests may appear," then the mortgagee obtains a vested legal interest in the contract. *McDowell*, 207 N.Y. at 485. The insurance is for the mortgagee's benefit to the extent of the debt, and the mortgagee may recover from an insurer up to his secured interest. *Fields*, 48 N.E.2d at 490–91, 290 N.Y. at 212–13; *Associates Commercial Corp. v. Nationwide Mut. Ins. Co.*, 298 A.D.2d 537, 538, 748 N.Y.S.2d 792, 793 (App. Div. 2d Dep't 2002) (noting that insurer, once given notice of creditor's claim under a policy requiring payment to the insured and creditor "as their interests appeared," paid the insured "at its peril and assumed the hazard of resisting" creditor's claim (citing *Rosario–Paolo, Inc. v. C & M Pizza Rest.*, 643 N.E.2d 85, 87, 84 N.Y.2d 379, 383, 618 N.Y.S.2d 766, 768 (1994))); *see Beets Wal Realty Corp. v. New York Prop. Ins. Underwriting Assn.*, 260 A.D.2d 520, 521, 688 N.Y.S.2d 253, 254 (App. Div. 2d Dep't 1999) (acknowledging "general rule" that a mortgagor is entitled "only to that portion of the insurance proceeds which exceeds the balance of the mortgage debt").

Nevertheless, summary judgment is appropriate where an insured party's computation of debts leaves no question that a balance would not remain after determining the rights of superior

creditors. *See Neighborhood Shopp v. Employers Commercial Union Ins. Co.*, 80 A.D.2d 603, 436 N.Y.S.2d 176 (App. Div. 2d Dep't 1981) (per curiam) (granting summary judgment to defendant insurer as against plaintiff in action to declare rights of plaintiff's creditors to insurance proceeds, because plaintiff conceded its corporate debts exceeded the proceeds); *Grunberger v. Iseson*, 75 A.D.2d 329, 332, 429 N.Y.S.2d 209, 210 (App. Div. 1st Dep't 1980) (dismissing suit by third mortgagee against title insurer for improperly listing her as fourth mortgagee, where foreclosure failed to fully satisfy even second mortgagee; since third mortgagee received no benefit from the sale, error in policy caused "no damage" to her); *c.f. Matter of Stable Mews Associates*, 49 B.R. 395, 397 (S.D.N.Y. Bankruptcy 1985) (holding that debtor lacked standing to contest size of trustee's fees appended to mortgagee's claim, where mortgage and priority tax lien together exceeded value of estate). Where a policy names two mortgages "as interests may appear," the first mortgage has priority in the insurance proceeds up to the outstanding amount owed under the first mortgage. *Bank of Rockville Centre Trust Co. v. Baldwin*, 238 A.D. 354, 356–57, 265 N.Y.S. 343, 346–47 (App. Div. 1st Dep't 1933); *Weiner v. Sentinel Fire Ins. Co.*, 87 F.2d 286, 289 (2d Cir. 1937) (applying New York insurance law to apportionment of fire insurance proceeds and holding that second mortgagee had no interest in proceeds, since they were less than amount due to first mortgagee); *see Grunberger*, 75 A.D.2d at 332, 429 N.Y.S.2d at 210.

EverHome's pleadings acknowledge that the outstanding balance of the First Mortgage on the date Travelers issued its check was greater than the amount of the check, (Fox Decl. ¶¶ 8–9), and that its interest in the insurance proceeds is limited to that portion greater than the amounts due to LaSalle. (EverHome Opp. at 5.) Here, since the outstanding balance on the

LaSalle Mortgage is greater than the insurance proceeds under the Policy, EverHome has no basis to claim the proceeds or challenge their distribution by Travelers.

However, EverHome argues that LaSalle waived its right to the proceeds by failing to sue Travelers once it was made aware of Travelers' distribution to Kraiem. EverHome cites *Greenberg v. 1625 Putnam Ave. Corp.*, 241 A.D. 623, 623, 268 N.Y.S. 553, 553–54 (App. Div. 2d Dep't 1934) for the proposition that a second mortgagee can acquire an equitable interest in insurance proceeds if a first mortgagee waives its rights to the same. While Travelers does not contest this proposition, it submits that nothing in the record establishes LaSalle's waiver of its superior interest in the insurance proceeds.

Waiver is "an intentional relinquishment of a known right" that "must be unmistakably manifested." *Echostar Satellite L.L.C. v. ESPN, Inc.*, 79 A.D.3d 614, 617, 914 N.Y.S.2d 35, 39 (App. Div. 1st Dep't 2010) (rejecting waiver argument as a matter of law)*; accord Krumme v. Westpoint Stevens Inc.*, 238 F.3d 133, 141 (2d Cir. 2000); *Bank of America, N.A. v. 414 Midland Avenue Assocs., LLC*, 78 A.D.3d 746, 750, 911 N.Y.S.2d 157, 161 (App. Div. 2d Dep't 2010). Generally, therefore, "mere silence or inaction . . . are insufficient" to support a finding of waiver. *Echostar*, 79 A.D.3d at 617–18, 914 N.Y.S.2d at 39; *Bank of America*, 78 A.D.3d at 750, 911 N.Y.S.2d at 161; *Golfo v. Kycia Assocs., Inc.,* 45 A.D.3d 531, 533, 845 N.Y.S.2d 122, 124 (App. Div. 2d Dep't 2007) ("A waiver is not created by negligence, oversight, or thoughtlessness, and cannot be inferred from mere silence." (citations and internal quotation marks omitted)).   Here, the record establishes only that LaSalle failed to take action against Travelers when Travelers paid the proceeds directly to Kraiem. This, alone, is insufficient to manifest an intentional waiver of its rights.

11

Further support can be found in New York Real Property Law § 254(4)(a). Generally, a mortgagee who retains insurance proceeds must apply them in satisfaction or reduction of the principal of the mortgage. *Fonda v. First Pioneer Farm Credit, ACA*, 86 A.D.3d 693, 694, 927 N.Y.S.2d 417, 418 (App. Div. 3d Dep't 2011) ) (citing N.Y. Real Prop. Law § 254(4)(a); *Fields v. Western Millers Mut. Fire Ins. Co.*, 48 N.E.2d 489, 491, 290 N.Y. 209, 214 (1943); *Meade v. North Country Co-op. Ins. Co.*, 120 A.D.2d 834, 836, 501 N.Y.S.2d 944, 946–47 (App. Div. 3d Dep't 1986); *First Nat. Bank of Scotia v. Sterling*, 71 A.D.2d 723, 724, 419 N.Y.S.2d 220, 222) (App. Div. 3d Dept. 1979)). But where a mortgagee intends for the mortgagor to repair the mortgaged property, the mortgagee may direct the insurance proceeds to the mortgagor to facilitate the repairs, or may hold the proceeds in trust until the mortgagor completes the repairs. *Fonda*, 86 A.D.3d at 694, 927 N.Y.S.2d at 418; *see Terraqua Corporation v. Emigrant Industrial Savings Bank*, 75 N.Y.S.2d 453, 455, 190 Misc. 474, 475 (Sup. Ct. 1947) (Section 254(4) "provides that when a mortgagor is required to keep the buildings insured for the benefit of the mortgagee, the money received by the mortgagee in payment of a fire loss on the mortgaged premises may be retained and applied against the principal of the mortgage *or he may pay the same over to the mortgagor for repairs*.") (emphasis added), *aff'd*, 273 A.D. 254, 76 N.Y.S.2d 610 (App. Div. 1st Dep't 1948).

In this case, EverHome concedes that both the LaSalle Mortgage and the EverHome Mortgage require that insurance proceeds be used to rebuild the Structure. (EverHome Opp. at 4.) Thus, if LaSalle had, *arguendo,* properly received the proceeds as the principal mortgagee, and then directed them to Kraiem to effect repairs of the structure as permitted by Section 254(4), EverHome would have no recourse to Travelers whether or not Kraiem completed the repairs. Thus, Section 254(4) suggests that a mortgagee does not waive its rights under an

insurance policy merely by permitting payment to a mortgagor. In any event, EverHome has not offered any evidence to suggest that LaSalle unmistakably relinquished its rights under the Policy.

Finally, EverHome argues that Travelers "recognized" EverHome's interest in the insurance proceeds, by sending a letter to Kraiem on September 29, 2006 demanding that she turn over the insurance proceeds to EverHome, and by issuing two further policy checks in 2008 with Kraiem, LaSalle, and EverHome named together as payees. Travelers denies the legal significance of this "recognition," but the Court need not reach the question, since LaSalle's rights in the proceeds were at all times superior to EverHome's, regardless of whatever position Travelers might have taken.

Because, as discussed above, EverHome had no claim the proceeds paid by Travelers to Kraiem because those proceeds were well under the value of the LaSalle Mortgage, it cannot contest Travelers' disbursement of those proceeds, whether under a contract theory or under any of the alternative theories set forth in the Amended Complaint, each of which is predicated on EverHome's rights under the Policy. (*See* AC ¶¶ 62, 70, 74, 82, 89.) Accordingly, the Court grants summary judgment to Travelers on all claims by EverHome.

## B. Travelers Motion against LaSalle

Travelers argues that the express two-year statute of limitations in the Policy bars LaSalle's crossclaims.

The standard New York fire insurance policy gives a mortgagee two years to bring suit, commencing on notification of loss by the insurer. *G.E. Capital Mtge. Servs. v. Daskal*, 211 A.D.2d 613, 615, 621 N.Y.S.2d 106, 107 (App. Div. 2d Dep't 1995); N.Y. Ins. Law § 3404(e)

(McKinney 2010)). Where a policy deviates from the standard policy by containing terms less favorable to the mortgagee, the policy is enforceable as if it conformed with the statute. *Daskal*, 211 A.D.2d at 615, 621 N.Y.S.2d at 108 (citing *1303 Webster Ave. Realty Corp. v. Great Am. Surplus Lines Ins. Co.*, 471 N.E.2d 135, 136, 63 N.Y.2d 227, 231 (1984) (per curiam); N.Y. Ins. Law § 3103(a)) (enforcing non-standard policy, but replacing requirement that mortgagee "bring suit within two years of the date of loss" with requirement that mortgagee sue "within two years after it has been notified of the loss by the insurer").

The Policy at bar states that "Policy conditions relating to Appraisal, Suit Against Us, and Loss Payment apply to the mortgagee." (Fox Decl. Ex. 5, form HO-3 at 11.) The Suit Against Us condition in the Policy's New York endorsement in turn states that "[n]o action shall be brought unless there has been compliance with the policy provisions and the action is started within two years after the occurrence causing loss or damage." (Fox Decl. Ex. 5, form HA-300 NY "Special Provisions – New York" at 3.) As in *Daskal*, this condition is enforceable as if it requires LaSalle to sue "within two years after it has been notified of the loss by the insurer." *Daskal*, 211 A.D.2d at 615, 621 N.Y.S.2d at 108.[4] In response to interrogatories and document requests asking when LaSalle was "first advised or notified" that a check was issued naming Kraiem, but not LaSalle, as a loss payee, LaSalle provided internal electronic records from its predecessor-in-interest noting on February 25, 2005, "PROPERTY HAS SUSTAINED A TOTAL LOSS," on March 1, 2005, "CALLED RONNI WITH TRAVELERS INS. SHE STATES THEY DO NOT HAVE US AS A LIEN HOLDER," and on January 4, 2007, "RC COPY OF TRAVELERS CK . . . MADE PAYABLE TO H/O ONLY." (LaSalle 56.1 Stmt. at 9; Fox Decl. in Suppt. Of Mot. against

---

[4] In its opposition papers, LaSalle takes the position that the Suit Against Us provision in the Policy is "per se invalid" since it "purports to apply from the date of loss rather than notification." (LaSalle Opp. at 6.) LaSalle provides no authority for this position, which contradicts a plain reading of *Daskal* and is at odds with the Court of Appeals' approach in *1303 Webster Ave. Realty*.

LaSalle Ex. 8.)  At best, such information constitutes notification of loss by Travelers no later than January 4, 2007.

LaSalle argues that the "Suit Against Us" provision "appears only to be incorporated in clause (c) of the mortgage clause," which requires a signed, sworn statement of loss from LaSalle within 60 days after receiving notice from Travelers that Kraiem failed to submit such a statement.[5] (LaSalle Reply at 6.) Lack of notification of Kraiem's failure, the argument goes, relieves LaSalle from complying with the "Appraisal," "Suits Against Us," and "Loss Payment" provisions. This strained reading, which relies exclusively on the paragraph separations in the mortgage clause, would also appear to relieve a mortgagee from compliance with these provisions any time a policyholder *did* timely submit a statement of loss.

"The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent," and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170, 98 N.Y.2d 562, 569 (2002) (citations and internal quotation marks omitted). "Further, a contract should be read as a whole, and . . . interpreted as to give effect to its general purpose." *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1214, 8 N.Y.3d 318, 324–325 (2007) (citations and internal quotation marks omitted).

The Policy places a duty on the policyholder to immediately report all losses, and to submit a sworn statement of loss within 60 days of request by Travelers. (*See* Fox Decl. Ex. 5,

---

[5] In its opposition LaSalle misreads this provision, which requires a statement of loss from LaSalle within sixty days of notice from Travelers that *Kraiem*, not LaSalle, failed to submit such a statement. (*See* Fox Decl. Ex. 5, form HO-3 at 1 ("Throughout this policy, 'you' and 'your' refer to the 'named insured' . . . ."), 11 (". . . within 60 days after receiving notice from us of *your* failure to do so.") (emphasis added).) LaSalle's reading, requiring Travelers to notify LaSalle that LaSalle itself had failed to submit its own statement of loss, would make little sense. Moreover, clauses (a) and (b) clearly distinguish the mortgagee from the party labeled "you." (*See id.* at 11 ("If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee: a. notifies us of any change in ownership, occupancy or substantial change in risk *of which the mortgagee is aware*; b. pays any premium due under this policy on demand *if you have neglected to pay the premium* . . . .") (emphasis added).)

form HO-3 at 9, section entitled "Your Duties After Loss".) LaSalle's proposed reading is in tension with this section, and with the Policy's general encouragement of timely loss-reporting. LaSalle does not explain why, as a logical or practical matter, the parties would have wanted the appraisal, suit, and loss payment clauses to bind only mortgagees only when mortgagors shirked their reporting duties and failed to timely submit a proof of loss. LaSalle's reading also appears to contravene New York Insurance Law Section 3404(g), which requires that a policy's statutory appraisal clause be binding at all times "on all parties to the contract of insurance evidenced by the policy." N.Y. Ins. Law § 3404(g) (McKinney 2010). The Court therefore adopts a more consistent and sensible reading of the mortgage clause, applying the appraisal, suit, and loss payment clauses to all mortgagees regardless of a policyholder's *or* insurer's compliance with clause (c).

Applying the New York "Suit Against Us" provision, as modified under *Daskal*, LaSalle had two years from notification of loss by the insurer to bring any claim under the Policy. This would include LaSalle's claim under a breach of contract theory, and its claims under the alternative theories of promissory estoppel, negligence, and breach of the implied covenant of good faith and fair dealing, each of which arises from LaSalle's alleged third-party beneficiary status under the Policy. LaSalle received a copy of the insurance proceeds check on January 4, 2007, but brought no claim against Travelers until June 8, 2010. Accordingly, all of LaSalle's crossclaims against Travelers are time-barred.

LaSalle contends that its crossclaims should "relate back" to EverHome's original December 11, 2006 filing date. But no federal or state rule allows LaSalle this benefit.

Under federal law, if a claim "arises under state law, or if the court borrows a state statute of limitations, relation back is to be determined by whichever procedural rule gives the most

favorable result to the plaintiff." *Smith v. Rochester Tel. Bus. Mktg. Corp.*, 786 F. Supp. 293, 309 (W.D.N.Y. 1992)), *aff'd*, 40 F.3d 1236 (2d Cir. 1994); *Pape v. Board of Educ. of Wappingers Central School Dist.*, No. 07-CV-8828 (KMK), 2009 WL 3151200, at *12 (S.D.N.Y. 2009); *see Da Cruz v. Towmasters of N.J.*, 217 F.R.D. 126, 129 (E.D.N.Y. 2003) (noting that Federal Rule of Civil Procedure 15(c)(1)(A) was added to clarify that "where state law governs the statute of limitations, relation back may apply if it would be permissible under state law."). Therefore, the Court must assess the availability of the relation-back doctrine to LaSalle's crossclaims against Travelers under both federal and New York relation-back principles, and then apply the more generous of the two. *See Pape*, 2009 WL 3151200, at *12.

Rule 13(g), under which LaSalle's crossclaims arise, does not expressly permit a crossclaim to relate back to the date of the filing of an original complaint. *Franklin Pavkov Const. Co. v. Ultra Roof, Inc.*, 51 F. Supp. 2d 204, 222 (N.D.N.Y. 1999) (citing *United States ex rel. Bros. Builders Supply Co. v. Old World Artisans*, Inc., 702 F. Supp. 1561, 1569 (N.D. Ga. 1988)). The Northern District of New York, deciding on first impression whether federal law nonetheless permits a defendant's crossclaim to relate back to the original filing of a complaint, emphasized the distinction between claims where a defendant "seeks to somehow reduce the amount a plaintiff can recover, through defensive claims such as contribution or indemnification" and "those where affirmative relief is sought." *Franklin Pavkov*, 51 F. Supp. 2d at 222 (citing *Bros. Builders Supply Co.*, 702 F. Supp. at 1569). The *Franklin Pavkov* court adopted the federal common law rule applied to counterclaims, that while defensive claims may relate back, "affirmative claims must satisfy the applicable statute of limitations." *Id.* (quoting *Appelbaum v. Ceres Land Co.*, 546 F. Supp. 17, 20 (D. Minn. 1981), *aff'd*, 687 F.2d 261 (8th Cir. 1982); *see also U.S., Dept. of the Navy v. Norden Enterprises, LLC*, No. 01 C 8968, 2004 WL

42318, at *2 (N.D. Ill. Jan. 6, 2004) (declining to apply relation-back doctrine and dismissing as untimely defendant subcontractor's crossclaims for "affirmative recovery" against co-defendant general contractor and insurer); *see also Kansa Reinsurance Co., Ltd. v. Congressional Mortg. Corp. of Texas*, 20 F.3d 1362, 1367 (5th Cir. 1994) ("Rule 13(g) governing crossclaims does not permit relation back of a crossclaim seeking affirmative and independent relief to the original complaint."); *In re Delta and Pine Land Co. Shareholders Litigation*, No. Civ.A. 17707, 2000 WL 1010584, at *4 (Del. Ch. July 17, 2000) ("Courts have unequivocally held that a cross-claim requesting affirmative relief . . . does not relate back to the original complaint."). The *Franklin Pavkov* court thus related-back a defendant subcontractor's cross-claims for construction materials, insofar as it faced direct claims by a plaintiff for the same, but dismissed as untimely the subcontractor's other, affirmative, cross-claims. *Franklin Pavkov*, 51 F. Supp. 2d at 222.

In this case, LaSalle's claims are plainly affirmative. No party has sought to recover the value of the insurance proceeds from LaSalle. In naming LaSalle as a defendant, EverHome sought only a declaratory judgment of entitlement to "any monetary amounts greater than the amounts due to LaSalle" under the LaSalle Mortgage. (EverHome Mem. at 5; AC at 15–17.) LaSalle did not bring its crossclaims to protect itself from EverHome's claim, but as a late attempt to recover the proceeds for itself. Applying the distinction adopted in *Franklin Pavkov*, under federal law no relation back is available for these claims.

Turning to New York procedure, the Civil Practice Law & Rules ("C.P.L.R.") contains two relevant relating-back provisions. The first, C.P.L.R. 203(d), when applicable, relates a defense or counterclaim back to the filing date of the original complaint, stating in part that "[a] defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed." N.Y. C.P.L.R. 203(d) (McKinney 2001). The second, C.P.L.R.

203(f), when applicable, states that claims brought by a new or existing party in an amended pleading are "deemed to have been interposed at the time the claims in the original pleading were interposed, unless the original pleading does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading."

Whether to apply C.P.L.R. 203(d) or 203(f) to a crossclaim turns on the same distinction identified in *Franklin Pavkov*. C.P.L.R. 203(d) is applied where the crossclaim is a "resistance to a cause of action." *Seligson v. Chase Manhattan Bank*, 50 A.D.2d 206, 209–10, 376 N.Y.S.2d 899, 903–04 (App. Div. 1st Dep't 1975) (applying C.P.L.R. 203(d) to crossclaims between intermediary and depositary banks for indemnity and recovery in action by drawee bank to recover on checks with forged indorsements); *see also Alvarez v. Attack Asbestos, Inc.*, 287 A.D.2d 349, 350, 731 N.Y.S.2d 431, 433 (App. Div. 1st Dep't 2001) (noting that C.P.L.R. 203(d) applies to crossclaims only where the cross-plaintiff's cause of action relates to a demand for relief it faces in the complaint). C.P.L.R. 203(f), in contrast, is applied to crossclaims in which the cross-claimant seeks its own "affirmative relief." *August Bohl Contracting Co. v. L.A. Swyer Co.,* 74 A.D.3d 1649, 1650–51, 903 N.Y.S.2d 793, 794 (App. Div. 3d Dep't 2010) (applying C.P.L.R. 203(f), in suit for breach of contract, where defendant sought to add crossclaims for violation of a statutory trust); *D & D Knits, Ltd. v. Grand Morgan Realty Corp.*, 213 A.D.2d 372, 372–73, 622 N.Y.S.2d 982, 983 (App. Div. 2d Dep't 1995) (per curiam) (applying C.P.L.R. 203(f) where second-floor tenant sued landlord and fourth-floor tenant for water damage, and fourth-floor tenant sought to add crossclaim against landlord for its own property damage).

Because LaSalle's crossclaims seek affirmative relief from Travelers, their relation back is governed by C.P.L.R. 203(f).[6]

To gain the benefit of C.P.L.R. 203(f), the substance of an added crossclaim must be virtually identical to an existing timely claim, the cross-plaintiff's *ad damnum* clause must not increase the cross-defendant's liability, and the cross-plaintiff must be closely related to the claimant of the timely claim. *See Aetna Cas. and Sur. Co. v. Manshul Const. Corp.*, No. 95 Civ. 3994(LMM), 1998 WL 401578, at *1 (S.D.N.Y. July 15, 1998) ("*Aetna Casualty*") (discussed *infra*) (citing *Key Int'l Mfg., Inc. v. Morse/Diesel, Inc.*, 142 A.D.2d 448, 459, 536 N.Y.S.2d 792, 798–99 (App. Div. 2d Dep't 1988)). C.P.L.R. 203(f) requires that the claimants be "so closely related or united in interest that the original claim would have given the defendant notice of the potential liability for the subsequent claim." *Fazio Masonry, Inc. v. Barry, Bette & Led Duke, Inc.*, 23 A.D.3d 748, 749, 803 N.Y.S.2d 729, 730 (App. Div. 3d Dep't 2005) (citing N.Y. C.P.L.R. 203(f); *State of New York v. General Elec. Co.*, 199 A.D.2d 595, 597–598, 604 N.Y.S.2d 355 (App. Div. 3d Dep't 1993); *Key Intl. Mfg.*, 142 A.D.2d at 458–59). A court should not relate-back a claim under C.P.L.R. 203(f) "where to do so would increase the measure of liability to which the defendants are exposed." *Fazio Masonry, Inc.*, 23 A.D.3d at 749, 803 N.Y.S.2d at 730 (quoting *Key Intl. Mfg.*, 142 A.D.2d at 459) (citing *General Elec. Co.*, 199 A.D.2d at 598). In applying C.P.L.R. 203(f), the New York Court of Appeals has advised the exercise of "sound judicial discretion to determine whether, on the facts, there is any operative prejudice precluding a retroactive amendment." *Duffy v. Horton Mem. Hosp.*, 488 N.E.2d 820, 893, 66 N.Y.2d 473, 477 (1985) (citations omitted).

---

[6] Although the parties' filings also address C.P.L.R. 203(d), that section is inapplicable to LaSalle's claims, at least because EverHome makes no affirmative demands for relief from LaSalle. *See Alvarez*, 287 A.D.2d at 350, 731 N.Y.S.2d at 433.

Although EverHome's claim and LaSalle's crossclaim are identical in substance, EverHome and LaSalle are neither "related" nor "united in interest" for the purposes of C.P.L.R. 203(f). *See Aetna Cas. and Sur. Co.*, 1998 WL 401578, at *1. In *Aetna Casualty*, a steel fabricator brought timely claims against a performance bond issuer. Aetna, the fabricator's surety, later sought to add nearly identical claims in its own name against the bond issuer. Since Aetna's claims were now untimely, it sought to relate them back to its principal's original filing. The court stated that "allowing a stranger to the original . . . action" to revive an otherwise time-barred claim "does not appear to be consonant with the meaning and purpose of C.P.L.R. § 203(f)." *Aetna Casualty*, 1998 WL 401578, at *1–*2. Judge McKenna analogized from *Krellenstein v. Fieldcrest Mills, Inc.*, 123 Misc.2d 783, 785 475 N.Y.S.2d 210, 212 (Sup. Ct. 1984), in which a personal injury plaintiff who originally sued an electric blanket manufacturer was not allowed to add late claims for property damage in his capacity as subrogor under his insurance policy, and from *Insurance Co. of North America v. Hellmer*, 212 A.D.2d 665, 665–67, 622 N.Y.S.2d 767, 768–69 (App. Div. 2d Dep't 1995), which similarly refused to apply the relation-back doctrine to an attempt by a subrogee to add its insured as a plaintiff. *Aetna Casualty*, 1998 WL 401578, at *2; *compare Schleidt v. Stamler*, 106 A.D.2d 264, 482 N.Y.S.2d 481 (App. Div. 1st Dep't 1984) (relating-back under C.P.L.R. 203(f) claim by corporate plaintiff to date that individual shareholder filed identical claim); *but see Poblocki v. Todoro*, 55 A.D.3d 1346, 1347, 865 N.Y.S.2d 448, 449 (App. Div. 4th Dep't 2008) (finding that court "neither abused nor improvidently exercised" its discretion in allowing intervenor medical insurer to relate its claims back to those of medical malpractice plaintiff, where defendants would "suffer no prejudice from the delay").

In this case, EverHome and LaSalle are unaffiliated companies related only by the Policy, and far less "related" than the parties in *Aetna Casualty* and the opinions it cites. Travelers might have conducted a very different defense if LaSalle had been a party to the original action, since EverHome, unlike LaSalle, was never going to benefit from the insurance proceeds. To allow LaSalle the benefit of EverHome's filing date would therefore prejudice Travelers, and would improperly increase the measure of liability to which Travelers is exposed. *See Fazio Masonry, Inc.*, 23 A.D.3d at 749, 803 N.Y.S.2d at 730. For these reasons, the Court in its discretion finds no reason to allow LaSalle the benefit of C.P.L.R. 203(f), particularly where LaSalle's predecessor-in-interest had ample notice and opportunity to bring claims against Travelers within the statutory period. (*See, e.g.,* Fox Decl. against LaSalle Ex. 10 (e-mail of April 15, 2007 from EverHome's parent company to LaSalle's predecessor soliciting it "to join with EverHome as a plaintiff in this action to seek return of the proceeds paid by Travelers."); *id.* Ex. 9 (emails of March 20, 2006 by both mortgagees acknowledging that Travelers issued check without either mortgagee named).)

Because the Court finds that LaSalle's crossclaims against Travelers are time-barred, the Court grants summary judgment to Travelers on all crossclaims by LaSalle.

**CONCLUSION**

For the reasons stated in this Memorandum and Order, Travelers' motions for summary judgment (Docket Nos. 102, 110) are GRANTED in their entirety.

This action is recommitted to the assigned magistrate judge for all remaining pre-trial proceedings.

SO ORDERED.

Dated: Brooklyn, New York
       March 14, 2012

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge